**McKELLEB CARPENTER HAZLEWOOD**
Michael W. McKelleb, NV Bar # 12040
Gregory A. Stein, NV Bar # 13592
871 Coronado Center Drive, Suite 200
Henderson, Nevada 89052
Telephone: (702) 659-9631
Facsimile: (800) 743-0494
minuteentries@carpenterhazlewood.com
michael.mckelleb@mchlawnv.com
greg.stein@carpenterhazlewood.com
VVENT.0001
*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| Kush, Inc., a Nevada corporation, | Case No. 2:20-cv-00647-APG-NJK |
| Plaintiff, | |
| v. | **MOTION TO DISMISS** |
| Frank Van Vranken, an individual; DOES I-X, inclusive, and ROE Corporations I-X, inclusive, | (Assigned to the Honorable Andrew P. Gordon) |
| Defendants. | Oral Argument Requested – LR 78-1 |

COMES NOW Defendant Frank Van Vranken, Sr. ("Defendant"), by and through undersigned counsel, and submits his Motion to Dismiss ("Motion") this action. Dismissal is warranted based on Plaintiff Kush, Inc.'s ("Kush") failure to state a claim upon which relief can be granted in accordance with Federal Rules of Civil Procedure 12(b)(6) and failure to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b). This Motion is supported by the following Memorandum of Points and Authorities.

RESPECTFULLY SUBMITTED this 13th day of April, 2020.

**McKELLEB CARPENTER HAZLEWOOD**

By:      */s/ Gregory A. Stein*
Michael W. McKelleb, Esq.
Gregory A. Stein, Esq.
871 Coronado Center Drive, Suite 200
Henderson, Nevada 89052
*Attorneys for Defendant*

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

Defendant is a longtime resident of the State of California. With his son and business associate, Frank Van Vranken, Jr. ("Frank Jr."), Defendant owns or controls the following California business entities: (1) Van Vranken Enterprises, Inc. ("VVE"); (2) Mendocino Green, LLC ("Mendocino Green"); and (3) North Cal Wood Products, Inc. ("NCWP"). Mendocino Green is in the business of growing, cultivating, and selling marijuana to consumers for both medicinal and recreational purposes. To this end, Mendocino Green holds state and county cannabis licenses authorizing it to operate a cannabis/marijuana business in the State of California and in Mendocino County, California. NCWP operates a lumber mill and lumberyard and produces reclaimed wood products for sale to consumers. VVE owns adjoining parcels of land in Ukiah, Mendocino County, California—located at 700 Kunzler Ranch Road and 860 Kunzler Ranch Road (the "Property")—upon which Mendocino Green grows and cultivates its marijuana and NCWP operates its lumber mill and lumberyard. Mendocino Green and NCWP lease sections of the Property; VVE is their landlord.

In 2017, Kush approached Defendant and the parties began discussing a possible business arrangement whereby Kush would invest certain sums of money in VVE, Mendocino Green, and/or NCWP in exchange for ownership interests in the entities. Initially, Kush was primarily interested in NCWP and provided capital sufficient for NCWP to purchase a working, Midwest lumber mill and ship it to the Property. However, Kush quickly lost interest in NCWP and Defendant/NCWP were forced to spend significant sums of money to later reconstruct the lumber mill on the Property after it was delivered. Kush never compensated Defendant/NCWP for these expenses. After losing interest in NCWP, Kush shifted its attention to Mendocino Green. As stated in its Complaint, Kush was attracted to the "emerging cannabis regulations in California that the [P]roperty was ideally suited for, upon which Kush secured multiple licenses that would enable projected revenue of $1-2M by the second year of operation – with long term forecasts exceeding $10M per year." Complaint at ¶ 20.

In October 2018, VVE and Kush executed a Securities Purchase Agreement (the "VVE Agreement"). At the same time, Mendocino Green and Kush executed a Membership Purchase Agreement (the "MG Agreement"). Although separately-executed contracts, the VVE Agreement and the MG Agreement were inextricably intertwined and the propriety of each necessarily depended on the other. In exchange for ownership interests in VVE and Mendocino Green, Kush agreed through both Agreements to: (i) forgive all of the capital investments made to date; (ii) assume and pay-off mortgages currently encumbering the Property; (iii) provide additional operating capital necessary to expand the Mendocino Green and NCWP operations; and (iv) convey stock in Kush and its parent company's burgeoning corporate marijuana empire to Defendant and Frank Jr.

3

Unfortunately, Defendant realized in mid-to-late 2019 that Kush had no interest in assuming and paying-off the mortgages encumbering the Property (Defendant was forced to obtain expensive, hard-money loans to avoid foreclosure of the Property) or providing sufficient operating capital to expand the Mendocino Green and NCWP operations. In fact, Kush actually harmed Mendocino Green's operations by forcing it to grow, cultivate, and sell Kush's patented "Ecuadorian Sativa" strain of marijuana, which proved costly and unpopular with consumers. Defendant also learned that Kush had imposed material, extracontractual restrictions on the stock it transferred through the VVE and MG Agreements, rendering those stock shares significantly less valuable than Defendant and Frank Jr. had bargained-for. Consequently, the parties' business relationship broke down and Kush filed the present lawsuit in Nevada state court on February 27, 2020.[1]

## II. **STANDARD OF REVIEW**

Under Rule 12(b)(6), a claim may be dismissed if it does not state a claim upon which relief can be granted. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate when the complaint does not give the defendant fair notice of a legally-cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the Court will accept all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

---

[1] Kush also filed a parallel lawsuit against Frank Jr. in Nevada state court on February 27, 2020. Frank Jr. recently removed that lawsuit to this Court, where it is pending before the Honorable James C. Mahan at Case No. 2:20-cv-00649-JCM-DJA.

However, the Court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Additionally, a court may also dismiss a complaint for failure to comply with Rule 9(b). *See Miscellaneous Serv. Workers, Drivers & Helpers, Teamsters Local #427 v. Philco-Ford Corp., WDL Div.*, 661 F.2d 776, 782 (9th Cir. 1981). To that end, Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Finally, while materials outside of the pleadings are not ordinarily considered on a motion to dismiss, the Ninth Circuit has identified two exceptions that permit courts to consider materials outside of the pleadings without converting a motion to dismiss to a motion for summary judgment. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). "First, a court may consider material which is properly submitted as part of the complaint....If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them." *Id.* "Second, under Fed. R. Evid. 201, a court may take judicial notice of matters of public record." *Id.* at 688-89.

## III. LEGAL ARGUMENT

### A. The underlying contracts (including the VVE Agreement) are illegal and unenforceable under the Controlled Substances Act.

Enforcement of the VVE Agreement as demanded by Kush would result in the enforcement of an illegal contract. No additional documents or evidence need to be referenced outside of Kush's Complaint itself. Specifically, Kush's Complaint contains the following allegations demonstrating that Kush's primary purpose in entering into the VVE Agreement was to advance its presence in the marijuana industry and to invest in and partner with existing companies to grow, cultivate, and sell marijuana:

> 8. Kush[2] holds production and marketing rights to "Ecuadorian Sativa," the first patented cannabis strain….
>
> 19. [At the time the VVE Agreement was executed, Defendant] committed to working with Kush to save and expand NCWP, to get MG licensed [to grow, cultivate, and sell marijuana] and generating significant revenue….
>
> 20. Kush, for its part, was attracted to the improving lumber market <u>and the emerging cannabis regulations in California that the property was ideally suited for, upon which Kush secured multiple licenses that would enable projected revenue of $1-2M by the second year of operation – with long term forecasts exceeding $10M per year</u>.
>
> 24. …Kush disbursed a sum at or near $1.5M – including a large portion designated for the MG build out, [cannabis] licensing and operations, with Kush purchasing a majority (60/40) interest in MG.
>
> 32. [Defendant] has claimed to have legally grown more than of [sic] 1,000 units of cannabis in 2018 and at or near 1,000 in 2019.
>
> 33. [Defendant] has failed to report sales since the contracts were signed.
>
> 35. [Defendant] has refused to pay to Kush sums received from NCWP and MG [in relation to growing, cultivating, and selling marijuana] which were

---

[2] Defendant notes that Plaintiff's name itself ("Kush") is a common slang term for marijuana.

6

properly distributable to Kush under the lease agreements between Kush and NCWP and MG.

(Emphasis added).

The foregoing allegations unmistakably demonstrate that Kush has failed to state a claim under Rule 12(b)(6) because enforcing the VVE Agreement **would require this Court to enforce a contract for the operation and expansion of a marijuana-cultivation business, which is illegal under Federal law**, namely the Controlled Substances Act, codified at 21 U.S.C. § 801 *et seq*. Furthermore, state law provides the rule of decision on the merits in this case, since Kush's theory of the purported breach of contract would require this Court to find that a contract for the operation and expansion of a drug business is enforceable, which it cannot do. *See Shimrak v. Garcia-Mendoza*, 912 P.2d 822, 825 (Nev. 1996) (Nevada recognizes the rule that "traditionally neither courts of law nor equity will interpose to grant relief to parties to an illegal agreement."); *see also Rivero v. Rivero*, 216 P.3d 213, 226 (Nev. 2009) ("Parties are free to contract, and the courts will enforce their contracts if they are not unconscionable, illegal, or in violation of public policy.") (emphasis added); *see also Loomis v. Lange Fin. Corp.*, 865 P.2d 1161, 1165 (Nev. 1993) ("No court should be required to serve as paymaster of the wages of crime.").

Each of Kush's seven claims for relief necessary depend upon the validity and enforceability of the VVE Agreement. Kush's First Claim for Relief (Breach of Contract) seeks damages based on Defendant's purported breach of the VVE Agreement; the Second Claim for Relief (Specific Performance) requests an order from this Court requiring Defendant to specifically perform certain aspects of the VVE Agreement; the Third Claim for Relief (Injunction) requests injunctive relief based on Kush's assertion that Defendant

failed to take action required under the VVE Agreement; the Fourth Claim for Relief (Declaratory Relief) seeks "[a] determination of the parties' rights and obligations under the VVE Agreement"; the Fifth Claim for Relief (Breach of the Covenant of Good Faith and Fair Dealing) alleges that Defendant acted "knowingly and intentionally…to deny Kush its reasonable and justified expectations under the VVE Agreement"; the Sixth Claim for Relief (Deceptive Trade Practices) contains Kush's assertion that Defendant made false representations in relation to and as part of the VVE Agreement; and the Seventh Claim for Relief (Interference with Prospective Economic Advantage) alleges that Defendant acted intentionally and in derogation of his obligations under the VVE Agreement to prevent Kush from enjoying the benefit of certain prospective contractual relationships. Because the VVE Agreement is illegal and unenforceable and each of Kush's claims for relief necessarily depend upon the validity and enforceability of the VVE Agreement, the Court must dismiss Kush's entire Complaint.

As set forth above, the Ninth Circuit has identified two exceptions that permit courts to consider materials outside of the pleadings without converting a motion to dismiss to a motion for summary judgment—(a) documents either physically attached or central to the allegations of a complaint; and (b) matters of public record. *Lee*, 250 F.3d at 688-89. The second exception is directly applicable here. On February 14, 2019, Kush filed its Form S-1 Registration Statement with the United States Securities and Exchange Commission ("SEC"). *See* Form S-1 attached hereto as **Exhibit "A."** Kush's Form S-1 is a matter of "public record" and is easily accessible using the SEC's online "EDGAR" database through the following website link: https://www.sec.gov/Archives/edgar/data/1695829/

000093979819000007/kushsone.htm. As part of its Form S-1, Kush described its general business operations as follows:

> Kush is a business acquisition and development company that focuses on using leading edge technology and proprietary intellectual property to build brand names in the cannabis and holistic health and wellness markets. We develop and integrate science based education and wellness systems, perform medical clinical research and product R&D under University Independent Review Boards (IRBs), and secure strategic marketing, branding, and acquisition opportunities in legal cannabis and holistic health related industries. At Kush, we believe that good health is a core essential in achieving happiness and personal well-being.
>
> Kush licenses intellectual property including our processes, <u>and then contracts with independent and licensed cannabis cultivators and processors who grow and handle the plant material, perform manufacturing processes, and work through distribution in order to service both medical marijuana patients and recreational cannabis consumers, all according to appropriate state cannabis laws</u>.

*Id.* at 6 (emphasis added).

Moreover, Kush's Form S-1 carefully details the inherent risks of its business practices:

> ***Cannabis continues to be a Controlled Substance under the United States Federal Controlled Substances Act and our business may result in federal civil or criminal prosecution.***
>
> <u>We are directly engaged in the medical and adult-use cannabis industry in the U.S. where local state law permits such activities however all such activities remain illegal under federal law in the U.S</u>. Investors are cautioned that in the U.S., cannabis is highly regulated at the state level. To our knowledge, there are to date a total of 33 states, and the District of Columbia, Puerto Rico and Guam that have legalized medical cannabis in some form, including California, although not all states have fully implemented their legalization programs. Ten states and the District of Columbia have legalized cannabis for adult use. Fifteen additional states have legalized high-cannabidiol ("CBD"), low Delta-9-tetrahydrocannabinol ("THC") oils for a limited class of patients. Notwithstanding the permissive regulatory environment of cannabis at the state level, cannabis continues to be categorized as a Schedule I controlled substance under the U.S. Controlled Substance Act of 1970 (codified in 21 U.S.C.A. Section 812) (the "Controlled Substances Act"). Under United States federal law, a Schedule I drug is considered to have a high potential for abuse, no accepted medical use in the United States, and a lack of accepted safety for the

use of the substance under medical supervision. Federal law prohibits commercial production and sale of all Schedule I controlled substances, and as such, cannabis-related activities, including without limitation, the importation, cultivation, manufacture, distribution, sale and possession of cannabis remain illegal under U.S. federal law. It is also illegal to aid or abet such activities or to conspire or attempt to engage in such activities. Strict compliance with state and local laws with respect to cannabis may neither absolve us of liability under U.S. federal law, nor provide a defense to any federal proceeding brought against us. An investor's contribution to and involvement in such activities may result in federal civil and/or criminal prosecution, including, but not limited to, forfeiture of his, her or its entire investment, fines and/or imprisonment.

…

*We could experience difficulty enforcing our contracts.*

<u>Due to the nature of our business and the fact that our contracts involve cannabis</u> and other activities that are not legal under U.S. federal law and in some jurisdictions, <u>we may face difficulties in enforcing our contracts in federal and certain state courts</u>. The inability to enforce any of our contracts could have a material adverse effect on our business, operating results, financial condition or prospects.

*Id.* at 8 and 14 (underlined text added; bold and italicized text in original).

Based on the detailed statements set forth above, Kush has admitted that the underlying contract it seeks to enforce is illegal under federal law and unenforceable in federal court. Consequently, Defendant respectfully requests that the Court dismiss Kush's entire Complaint—a result Kush clearly understood to be a likely result if it sought to enforce the terms of one of its contracts in federal court.

**B. VVE has owned both parcels that comprise the Property since 2003 and 2011, respectively.**

If the Court declines to dismiss Kush's Complaint in its entirety, the Court should alternatively dismiss Kush's Third (Injunction), Sixth (Deceptive Trade Practices), and Seventh Claims for Relief (Interference with Prospective Economic Advantage). As set forth throughout its Complaint, Kush contends that Defendant acted wrongfully by failing to

transfer the subject parcels that comprise the Property and were allegedly titled in Defendant's name into VVE's name. However, despite Kush's assertions to the contrary, VVE has owned both of the subject parcels since 2003 and 2011, respectively. *See* Grant Deed[3] and Quit-Claim Deed[4] attached hereto as **Exhibits "B"** and **"C,"** respectively. Accordingly, there is no legitimate dispute that the Property has not been titled in Defendant's name during any time period applicable to Kush's Complaint.

With respect to a court's consideration of materials outside of the pleadings, both exceptions approved by the Ninth Circuit are applicable here. As stated above, an overarching theme of Kush's Complaint is its contention that Defendant acted wrongfully by failing to transfer the Property that was allegedly titled in Defendant's name into VVE's name. Kush repeats some variation of this claim in at least 21 separate paragraphs of its Complaint. *See* Complaint at ¶¶ 38-41, 57, 71-72, 81-84, 87-88, 95, 97, 101-102, 104, 106, and 111-112. Based upon even a cursory review of Kush's Complaint, it is clear that title to the Property and the expected profits to be derived from growing marijuana plants thereon were the most important or "central" factors to Kush in executing the VVE Agreement. Furthermore, the vesting deeds attached hereto as **Exhibits "B"** and **"C"** constitute official/public records of Mendocino County, California for which there is no legitimate dispute as to authenticity.

---

[3] Recorded on August 18, 2003 in the Office of the Mendocino County (California) Recorder at Document No. 2003-21488.

[4] Recorded on November 2, 2011 in the Office of the Mendocino County (California) Recorder at Document No. 2011-15403.

11

Upon review of the vesting deeds, the Court must dismiss Kush's Third, Sixth, and Seventh Claims for Relief. In its Third Claim for Relief (Injunction), Kush requests an order from this Court "enjoin[ing] [Defendant] from any transfer, encumbrance, and otherwise as necessary to maintain the Property free and clear of all liens, charges, encumbrances, debts, obligations and liabilities whatsoever." *Id.* at ¶ 84. Because he does not own the Property, however, Kush's Third Claim for Relief requesting an injunction prohibiting Defendant from transferring or encumbering the Property fails to state a claim for relief and must be dismissed. Moreover, the entirety of Kush's Sixth (Deceptive Trade Practices) and Seventh Claims for Relief (Interference with Prospective Economic Advantage) involves its assertion that Defendant acted wrongfully by failing to transfer the Property that was allegedly titled in Defendant's name into VVE's name. Nevertheless, as repeatedly stated herein, the Property is and has always been titled in VVE's name. Consequently, Kush's Sixth and Seventh Claims for Relief seeking monetary damages also fail to state claims for relief and must be dismissed.

**C.  Kush failed to plead fraud with particularity as required by Rule 9(b).**

As a further alternative argument—and to the extent the Court views Kush's Sixth Claim for Relief as asserting false representations apart from ownership of the Property—the Court must dismiss Kush's Sixth Claim for Relief based on its failure to plead fraud with particularity as required by Rule 9(b). Upon review, the only allegations contained in Kush's Sixth Claim for Relief that are even arguably pled with particularity again relate to the ownership of the Property. *See id.* at ¶¶ 101-102. For the reasons set forth above, the Property is and has always been titled in VVE's name.

Finally, Paragraph 103 of Kush's Complaint, which states that "Defendants knowingly made other false representations in the VVE Agreement for pecuniary gain, to be proven at time of trial," does not satisfy the heightened pleading standard required by Rule 9(b). *See Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient."). As evident, Paragraph 103 represents Kush's mere conclusory allegation that Defendant engaged in fraudulent activity, without identifying the circumstances or providing any context so that Defendant can prepare a responsive pleading.

### IV.     CONCLUSION

For the reasons detailed herein, Defendant respectfully requests that the Court dismiss Kush's Complaint.

RESPECTFULLY SUBMITTED this 13th day of April, 2020.

**McKELLEB CARPENTER HAZLEWOOD**

By:     */s/ Gregory A. Stein*
Michael W. McKelleb, Esq.
Gregory A. Stein, Esq.
871 Coronado Center Drive, Suite 200
Henderson, Nevada 89052
*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2020, I electronically transmitted the foregoing Motion to Dismiss using the CM/ECF System for filing, and that I transmitted a Notice of Electronic Filing to the following CM/ECF registrants:

>Kenneth Hogan, Esq., and Jeffrey Hulet, Esq.
>HOGAN HULET, PLLC
>1140 North Town Center Drive, Suite 300
>Las Vegas, Nevada 89144
>ken@h2legal.com
>jeff@h2legal.com
>*Attorneys for Plaintiff*

By:   Christina Rakovitis