HOGAN HULET PLLC
KENNETH HOGAN
Nevada Bar No. 10083
Email: ken@h2legal.com
JEFFREY HULET
Nevada Bar No. 10621
E-mail: jeff@h2legal.com
1140 N. Town Center Dr. Suite 300
Las Vegas, Nevada 89144
Tel/Fax: (702) 800-5482
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KUSH, INC., a Nevada corporation, | CASE NO. 2:20-cv -00647-APG -JNK |
| Plaintiff, | |
| vs. | **RESPONSE TO MOTION TO DISMISS** |
| FRANK VAN VRANKEN, an individual; DOES I-X, inclusive, and ROE Corporations I-X, inclusive, | |
| Defendants. | |

Plaintiff KUSH, INC. ("Plaintiff") hereby files its Response to the Motion to Dismiss filed by Defendant Van Vranken.

This Response is made and based on the following Memorandum of Points and Authorities, the papers and pleadings on file herein, and any argument of counsel to be entertained by the Court.

DATED this 27th Day of April, 2020.

                                      HOGAN HULET PLLC

                                      ss:// Kenneth E. Hogan
                                      Nevada Bar 10083
                                      1140 N. Town Center, Suite 300
                                      Las Vegas, Nevada 89144
                                      Attorneys for Plaintiff, Kush, Inc.

Hogan Hulet PLLC
1140 N. Town Center Dr.
Suite 270
Las Vegas, Nevada 89144
(702) 800-5482

1 of 15

## MEMORANDUM OF POINTS AND AUTHORITIES

### A. Statement of Relevant Facts.

1. The contract at issue, sought to be enforced by and through the Complaint, is a Securities Purchase Agreement (the "SPA").

2. The Complaint does not seek any relief that would cause the Defendant to act illegally. See ECF 1 (containing the Complaint).

3. Paragraph 54 of the Complaint asserts that "by his signature on the SPA [Defendant] did in fact sell and transfer said stock to Kush but [Defendant] has failed to issue stock certificates reflecting said ownership and has failed to provide any documentation that said sale has been documented at least as uncertificated shares in the books and records, including the Stock Ledger, of VVE." Id.

4. Paragraph 55 of the Complaint asserts that Defendant was contractually obligated to take all actions consistent with the terms of the VVE Agreement to carry out the transactions contemplated therein. Id.

5. Paragraph 56 of the Complaint asserts that Defendant "failed and refused to provide Kush with documentation of its controlling interest over VVE and the Property, which was a material term of the parties' agreements." Id.

6. The Complaint seeks specific performance of obligations owing pursuant to the SPA. Id, at ¶¶ 11, 12, 16(b), and 57.

## II.

## LEGAL ARGUMENT

### A.

### Legal Standard

> In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.
> .

Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Hogan Hulet PLLC
1140 N. Town Center Dr.
Suite 270
Las Vegas, Nevada 89144
(702) 800-5482

## **Legal Argument**

The Motion argues that (A) given post-commencement clarity on the Property Deed, judicially admitted by Defendant in his filing, the Third, Sixth, and Seventh Claims for Relief must be dismissed, and that (B) the SPA is illegal and unenforceable under federal law and the Complaint must accordingly be dismissed in its entirety. See *generally*, Motion.

**A.** THE CLAIMS INCORRECTLY ASSERTING A FAILURE TO TRANSFER THE PROPERTY DEED TO VVE MAY BE DISMISSED.

Upon providing to Plaintiff the Property Deeds for the real property discussed in the SPA, Defendant cleared up confusion concerning Defendant's statement that he was unilaterally "taking the property out of the deal" after it had been consummated. See Complaint, ¶ 37 (explaining that the confusion was created on October 25, 2019 when this Defendant stated that he was unilaterally taking the Property out of the deal and intended to retain it in his name). Once that conclusion had been cleared up, first by the presentation to Plaintiff of the Property Deeds and now the judicial admission that the property is indeed in the name of VVE, the Complaint were to be amended. However, Defendant filed to remove and immediately brought the Motion to Dismiss before and Amended Complaint could be put on file.

The point is that Plaintiff *agrees* that the Third, Sixth, and Seventh Claims for Relief as presently stated may be dismissed as more fully discussed below – however, in so doing, *the Complaint clearly does not seek relief in an amount in excess of $75,000* and upon such dismissal, the case must be remanded to State Court. This lack of jurisdiction (if it ever existed)[1], upon the stipulated dismissal of the Third, Sixth, and Seventh Claim for Relief, makes the entirety of Defendant's second argument moot, in that the Court has no jurisdiction upon which to decide the balance of the Motion in federal court and based on federal law where the SPA itself agrees that it shall be governed by Nevada law.

*1. The Third Claim for Relief (Injunctive Relief).*

The Third Claim for Relief (Injunction) seeks an order to "enjoin [Defendant] from any transfer, encumbrance, and otherwise as necessary to maintain the Property free and clear of all

---

[1] See Plaintiff's Motion for Remand (ECF 12).

Hogan Hulet PLLC
1140 N. Town Center Dr.
Suite 270
Las Vegas, Nevada 89144
(702) 800-5482

3 of 15

liens, charges, encumbrances, debts, obligations and liabilities whatsoever." Id. at ¶ 84. Plaintiff agrees with the Motion, that because it has now been judicially admitted that this Defendant does not own the Property at issue, and the Claim may be dismissed.

### 2. *The Sixth Claim for Relief (Deceptive Trade Practices).*

Similarly, the Sixth Claim for Relief is made and based on the belief that Defendant had transferred the Property into his own name, in derogation of the representation in the SPA that the Property was titled to VVE.  The Claim for Deceptive Trade practices has been resolved through Defendant providing proof of Title to the property at issue in the SPA, and although it was specifically pleaded, it may nonetheless be dismissed by stipulation.

### 3. *The Seventh Claims for Relief (Interference with Economic Advantage).*

This Claim for Relief also as presently on file centers upon Defendant's wrongful withholding or transfer of Property title – again clarified by presentation of the Deeds and Defendant's judicial admission that "as repeatedly stated herein, the Property is and has always been titled in VVE's name." Motion, p. 12:14-15. This Claim, likewise, may be dismissed.

Upon dismissing these claims, particularly the Sixth and Seventh claims, it is Plaintiff's position that if jurisdiction ever existed, it is removed along with the potential monetary damages attendant to the Deceptive Trade Practices and the tort of Interference.  Upon dismissing these claims, the Court should forgo ruling on the federal law argument and remand the case to State Court for further proceedings.

**B. THE PURCHASE OF CORPORATE SECURITIES IS NOT ILLEGAL**.

Even if the Court were to retain federal jurisdiction of a matter focused on relief that is the mere satisfaction of ministerial duties, particularly after dismissing the Third, Sixth, and Seventh Claims for Relief, the Motion remains without merit.  The gravamen of the balance of Defendant's Motion is that the SPA is unenforceable as a matter of *federal* law upon the assertion that the SPA is an illegal contract.  See Motion, ECF 8, at pp.6:1-7:20. The SPA itself, however, is not even in evidence before this Court.

1. <u>The facts to be proven by this Plaintiff are that the SPA contains nothing illegal</u>.

The Motion fails because there is most certainly a set of facts that can be proven in support of its claim which would entitle this Plaintiff to relief – specifically, that the SPA, or any part of it, requires no illegal conduct whatsoever, does not even discuss marijuana, and simply addresses a completely legal purchase of securities.  Moreover, it cannot "appear beyond doubt" that these facts can never be proven because the SPA itself unconstestedly exists and may be set in evidence before this Court.  Prevailing at this stage of the proceedings on the argument that the SPA is illegal in its entirety would  require a Motion for Summary Judgement – exhibiting the parties' actual agreement – without which this Court could not possibly determine that the SPA is illegal *en toto*, or what parts may be unenforceable. No matter what spin the Defendant may attempt to put on it, the SPA is a Securities Purchase Agreement, and the purchase of corporate securities in not illegal under either state or federal law. Nor is the documentation of the transfers attendant to the transaction.

2. <u>There is no admission within the Complaint that the SPA is illegal</u>.

The Motion (at p. 6:12-7:3) attempts to make an issue of fact allegations within the Complaint to support its strained position that the sale of corporate securities is illegal, but the attempt falls short of making any valid point relevant to the enforceability of the SPA.

As excitedly emphasized in the Motion, the Complaint does candidly admit that Kush owns rights to certain strains of marijuana cultivars, but it is not illegal for such an entity to purchase corporate securities and Defendant presents no caselaw to the contrary.  The Motion also highlights that the Complaint notes that there were discussions to expand a lumber enterprise and assist a third party entity in obtaining a cannabis cultivation license in California, but not only are those discussions not a part of the SPA, it is not in any way illegal to discuss investing in a logging company or to discuss assisting an entity to obtain state-approved regulatory licensing, and again this Defendant presents no legal authority to the contrary.  The Motion also lacks a purpose in highlighting that   the Complaint states that the property transferred as a part of the SPA was attractive to Kush for potential licensed marijuana cultivation, but assessing real property for potential uses is not illegal, and the Motion presents no caselaw upon which to argue otherwise. The Motion next attempts to make issue that Kush had disbursed monies, outside of the SPA, to

Hogan Hulet PLLC
1140 N. Town Center Dr.
Suite 270
Las Vegas, Nevada 89144
(702) 800-5482

5 of 15

build out a third party entity's licensing and operations and purchased an interest in a third party entity, but neither those loans nor the purchase is a part of the SPA, there is no claim for relief in this Complaint concerning the loan or the other purchase agreement, and in any event, neither lending to nor purchasing interests in a marijuana business is illegal. In sum, the Motion's argument ends without any legal precedent whatsoever that would render any conduct alleged in the Complaint or for that matter the SPA "illegal."

Even more absurd, in that same section of the Motion (pp. 6:12-7:3), Defendant attempts to argue that *his own* involvement in marijuana cultivation, or his refusal to report sales or pay to Plaintiff sums accepted by Defendant from two third party lessees on the subject property renders the SPA unenforceable. The Motion presents no evidence whatsoever that SPA *requires* marijuana cultivation by this Defendant, and to the contrary, it actually is structured to remove Defendant's right to decide how the Property is to be used by transferring a controlling interest in the Property to Plaintiff.  Likewise, the reporting of revenues and rental income received by this Defendant while he confused the issue to Property title, is not illegal.

In the end, the entirety of Defendant's argument about what the Complaint itself says (completely avoiding and omitting what the SPA itself says) fails upon a long-settled principle of law:

> It is an ancient principle, and a well-founded one, that the law does not punish a wrongful intent when nothing is done to carry that intent into effect. Much less will the law punish or penalize the bare knowledge of the wrongful intent, without any participation in it.
.

Loose v. Larsen, 40 Nev. 157, 159, 161 P. 514, 515, 1916 Nev. LEXIS 48, *2-3.

Upon this meritless presentation of the foregoing "facts," the Motion then jubilantly proclaims (in naked conclusory fashion) that:

> The foregoing allegations unmistakably demonstrate that Kush has failed to state a claim under Rule 12(b)(6) because enforcing the VVE Agreement [the SPA] would require this Court to enforce a contract for the operation and expansion of a marijuana-cultivation business that is illegal under Federal law, namely the Controlled Substances Act.

Motion, p. 7:4-10.

Hogan Hulet PLLC
1140 N. Town Center Dr.
Suite 270
Las Vegas, Nevada 89144
(702) 800-5482

6 of 15

That is quite an assertion given that not a single provision of the actual SPA was cited to support the conclusion, and conclusion utterly fails under modern legal decisions.

### C. FEDERAL LAW DOES NOT PROHIBIT PROPERLY DOCUMENTING OF A SALE OF SECURITIES, AS SOUGHT IN THIS COMPLAINT.

The legal foundation of the Motion is just as frail as its attempted factual support in seeking to have an agreement not before the Court adjudicated as "illegal."

The Controlled Substances Act, 21 U.S.C. §§ 801-904 ("CSA") does prohibit, for example, the manufacture, distribution, dispensing of, or possession with intent to manufacture, distribute, or dispense, a controlled substance. 21 U.S.C. § 841(a). It does not, however, prohibit the proper documentation of a sale of securities, or the issuance of certificates reflecting that sale. Defendant attempts to draw the sale of securities by and between persons or entities who may be involved in or profit from marijuana cultivation under State licenses into the reach of the CSA, but that strained attempt fails miserably not only under U.S. Code, but under modern federal caselaw.

Said plainly, this Defendant is not the first defendant to attempt an escape from his contractual obligations (after freely agreeing to be bound by them) through claiming an "illegal contract." Examples follow.

1. <u>St. v. V.</u>, 2020 U.S. Dist. LEXIS 58003, *16-17

This recent March 31, 2020 decision from the U.S. Federal Court, District of Nevada, addressed the Defendants' renewed argument in that action concerning contract "illegality" under the CSA, despite a previous order in the action finding that the Court could grant Plaintiff's relief under Nevada substantive law in a manner that did not conflict with federal law (citing <u>Ginsburg v. ICC Holdings, LLC</u>, No. 3:16-cv-2311-D, 2017 U.S. Dist. LEXIS 187391, 2017 WL 5467688, at *9 (N.D. Tex. Nov. 13, 2017) (explaining that promissory notes financing a marijuana business are not automatically void because "federal courts do not take such a 'black-and-white' approach to enforceability."); <u>Mann. v. Gullickson</u>, No. 15-cv-03630-MEJ, 2016 U.S. Dist. LEXIS 152125, 2016 WL 6473215, at *7 (N.D. Cal. 2016) (explaining that payment for the purchase of a marijuana business "does not require [defendant] to possess, cultivate, or distribute marijuana . . . . [t]hus, . . . ordering payment on the parties' contract would not mandate illegal conduct."). In concluding that

such a remedy is possible, the Court had previously explained that the entire agreement is not automatically unenforceable because, "Nevada law allows courts to sever the illegal portions from those that are legal, and then enforce the legal portions." The Court clarified that if the illegal provisions at issue in that action were severable, a court may fashion relief.

Here, there is no route through which the Court could possibility perform a severability analysis, because the actual document has never been set into evidence before the Court. This Defendant has not even identified in its Motion the portions of the SPA it asserts to be purportedly illegal, and procedurally, cannot do so through its Reply. Even if a portion of the SPA could be adjudicated as violating the CSA, the modern approach in the District of Nevada is to simply sever that portion of the agreement and fashion relief accordingly.

    2.  *Burton v. Maney (In re Burton), 610 B.R. 633, 637, 2020 Bankr. LEXIS 116, \*8-9, 68.*

In this 2019 decision, the United States Bankruptcy Appellate Panel for the Ninth Circuit stated quite plainly that "the mere presence of marijuana near a bankruptcy case does not automatically prohibit a debtor from relief." In re Bruton (citing Olson v. Van Meter (In re Olson), BAP No. NV-17-1168-LTiF, 2018 Bankr. LEXIS 480, 2018 WL 989263, at *7 (9th Cir. BAP Feb. 5, 2018) (Tighe, J., concurring) (citing Northbay Wellness Grp., Inc. v. Beyries, 789 F.3d 956, 960-61 (9th Cir. 2015)); cf. Garvin v. Cook Invs. NW, SPNWY, LLC, 922 F.3d 1031 (9th Cir. 2019) (affirming bankruptcy court's confirmation of a chapter 11 plan where the plan derived indirect support from rental income from a lessor engaged in a marijuana growing business).

Here, Defendant's entire argument strains to prove that "there is marijuana near" the SPA, but that effort falls short of making any valid point given that indirect relationships are inadequate to prevent federal relief.

    3.  *Mann v. Gullickson, 2016 U.S. Dist. LEXIS 152125, \*1, 2016 WL 6473215*

In Mann, *supra*, the issue before the Court was whether a contract to sell a business that involved consulting for medical marijuana dispensaries and related businesses, and selling plant growing equipment and related information, was void for illegality under federal law. Mann, 2016 LEXIS 152125 at *2–4. Even though those activities were by 2016 legal under state law, the buyer refused to pay on the notes owed to the seller and sought to dismiss the seller's breach of contract

Hogan Hulet PLLC
1140 N. Town Center Dr.
Suite 270
Las Vegas, Nevada 89144
(702) 800-5482

action on the grounds that the contracts were void *ab initio* for violation of federal law. Id. at *5. The court soundly rejected that argument, concluding that the contract related to lawful activity under California law, and federal policy on medical marijuana authorized by states is in flux. Id., at *13–14. The court also held that requiring the buyer to pay the notes would not require her to violate federal law because the buyer was not required under the note to possess or sell marijuana in violation of federal law. Id. at *33-34. The court further reasoned that voiding the note would be contrary to state policy on medical marijuana because California, like other states, had by that time authorized use, possession, and distribution of medical marijuana for the health of their residents. Id. at *33-34. The court further found that the buyer understood upon signing the contract that possession, sale, and use of marijuana was prohibited by federal law. Id. at *31-32. The court also weighed the effect on the public if the contract was found to be void, noting that such a holding would encourage illicit conduct – not in possession or sale of marijuana, but in rampant nonpayment for services rendered pursuant to a contract. Id. at *32.

This analysis is on point here, where this Defendant cannot – and should not – escape contractual obligations that are wholly in line with State and Federal policy and law, where Defendant clearly (admitting in the Motion he, himself, is active in marijuana cultivation) understood federal law on the issue of marijuana at the time of entering the SPA, and as in the foregoing case, excusing performances owing under the SPA in these circumstances would not promote justice, but rather, promote a flood of contractual breaches wherever "marijuana is near."

    4. <u>Green Earth Wellness Ctr., LLC v. Atain Specialty Ins. Co.</u>, 163 F. Supp. 3d 821, 823 (D. Colo. 2016).

In <u>Green Earth Wellness</u>, the court rejected a claim that a commercial insurance policy protecting a retail medical marijuana business was unenforceable. The court found that plaintiff purchased commercial insurance for its medical marijuana business. Id., at 823. The plaintiff later filed claims for smoke and ash damage from a nearby wild-fire and for theft of some of its product, which the insurer denied. Id.  The plaintiff sued the insurer for, *inter alia*, breach of contract. Id. The court wholly rejected the insurer's assertion that it would be illegal to pay for the plaintiff's damages since marijuana is illegal under federal law, noting that the United States had shown an

Hogan Hulet PLLC
1140 N. Town Center Dr.
Suite 270
Las Vegas, Nevada 89144
(702) 800-5482

9 of 15

ambivalence in prosecuting marijuana cases when the use or distribution was authorized by state law, and it was doubtful the plaintiff would be prosecuted. Id. at 832–33. The court concluded that the parties had entered into the policy of their own will, knowingly and intelligently, and given the lack of clear and consistent federal public policy in the area, the insurer was obligated to comply with the contract. Id.

Given the present policies of the federal government and Justice Department, the result in this case should be no different: Defendant must be ordered to perform the obligations that he knowingly and intelligently entered into under the SPA, particularly where the performance of those obligations requires no illegal act whatsoever.

5. *Green Cross Med., Inc. v. Gally, 242 Ariz. 293, 294, 395 P.3d 302, 303 (Ct. App. 2017)*

The Green Cross Med decision upheld a marijuana-based property lease where the defendant (landlord) entered into a property lease with the plaintiff under which the plaintiff would operate a medical marijuana dispensary, upon which the defendant landlord argued the lease was illegal and unenforceable. 242 Ariz. at 294, 395 P.3d at 303. The trial court agreed, holding the lease violated both federal and state law and was therefore void for illegality. The appellate court, however, reversed. The relevant analysis was that even if the plaintiff lessee's plan to operate a medical marijuana facility within the leasehold would have violated federal law "the right to sublease was a valuable property right that involves no controversy over its legality." Id. at 296, 395 P.3d at 305. The court also ruled that federal illegality did not bar the lessee from seeking contract damages. "Given the federal government's lack of interest in prosecuting individuals in compliance with [Arizona's medical marijuana laws], as well as a public policy that favors enforcement of the lease compliant with state law, the purported illegality here does not render the lease void as illegal, at least for purposes of a damages action." Id. at 299, 395 P.3d at 308.

Here, public policy clearly favors the enforcement of a wholly legal and enforceable Securities Purchase Agreement, to include but not limited to ensuring that such transfers of interest are properly documented by timely-issued Stock Certificates. This case is exemplary, in that Defendant's failure to timely issue the Certificates upon closing the transaction (with Defendant taking the benefit but refusing the burden of the transaction) did nothing but confuse the performing

Hogan Hulet PLLC
1140 N. Town Center Dr.
Suite 270
Las Vegas, Nevada 89144
(702) 800-5482

10 of 15

party to the transaction for no valid reason, directly in conflict with the entire purpose of contract law, which is to bring certainty to transactions and remedies for breach.

*6. The caselaw cited by Defendant is without merit.*

Defendant's frail legal framework, while conspicuously omitting any discussion of relevant caseleaw as per above, instead tenuously relies wholly on citations to long-outdated and irrelevant state court cases, none of which actually deals with modern views of contracts in which "marijuana is near." See Motion, p. 7:15-22 (citing Shimrak from 1996; Rivero from 2009, and Loomis from 1993). Times have changed.[2]

Here, applying the foregoing relevant to the instant action, the result is the same, this Court cannot possibly determine that the SPA is void for illegality.

First, the SPA is not before the Court in evidence.

Second, the federal government has shown no interest in prosecuting marijuana business in compliance with state law, and even federal policy is at best "fluid" with regard to balancing federal law with the reality of State Sovereignty. The "legality or illegality of performance under a contract is usually determined by the local law of the state where this performance either has taken, or it to take, place." Restatement (2d) of Conflict of Laws § 202(2) cmt. c (1971). Nevada legalized medical and recreational marijuana in that time, and the industry has grown and generated millions in revenue – and taxes – for Nevada. The same is true of California. Notably, as to the current fluidity of federal policy on these issues, in 2016, Congress barred the Department of Justice from using any funding to prosecute people using or distributing medical marijuana in compliance with state laws. Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, 129 Stat. 2242 (2015). Pursuant to that act, the Department of Justice may not use any of its funding "with respect to . . . Nevada . . . to prevent [it] from implementing [its] own laws that authorize the use, distribution, possession, or cultivation of medical marijuana" Id. at § 542, 2332-33. The Ninth Circuit has held that the Appropriations Act prohibits the Department of Justice from interfering with the implementation

---

[2] This Plaintiff is not saying that the defense attempted to intentionally mislead this Court as to recent CSA/marijuana decisions or current federal policy, but plainly, the legal argument presented to this Court is deeply, deeply flawed.

Hogan Hulet PLLC
1140 N. Town Center Dr.
Suite 270
Las Vegas, Nevada 89144
(702) 800-5482

11 of 15

of such laws not simply by suing states with medical marijuana laws, but also by not prosecuting private individuals under federal law for conduct compliant with the state medical marijuana law in their jurisdiction. United States v. McIntosh, 833 F.3d 1163, 1176-77 (9th Cir. 2016).

Third, just as in St. v V, Burton, Mann, Green Earth, and Green Cross, allowing a specific performance or damage action for Defendants' violation of the SPA would not be requiring anyone, either this Plaintiff or this Defendant, to violate federal law. Plaintiff just wants the Stock Certificates, as plainly obligated under the SPA.

Fourth, just as in the cases explained above, voiding contracts relating to marijuana businesses operating legally under State laws would lead to unjust enrichment and an unconscionable windfall to this Defendant. To allow this Defendant to avoid the burdens of the SPA after having accepted the benefits of the bargain would undermine contracts made in Nevada under Nevada law and signal a discordant precedent that any contract with any interaction with a marijuana business is voidable.

Fifth, just like the other parties in the cases above in which invalidation of the subject agreements was denied, Defendant here has the moral responsibility to honor the obligations he agreed to under the SPA. Sometimes the notion of honor, alone, should guide what is just and proper.

Ultimately, as succinctly stated in Mann:"[E]ven where contracts concern illegal objects, where it is possible for a court to enforce a contract in a way that does not require illegal conduct, the court is not barred from according such relief." Mann, *supra,* at *23-24 (N.D. Cal. Nov. 2, 2016). That is the law of Nevada, as well. Upon that sentence alone, where this Defendant has presented insufficient argument and evidence for this court to analyze the SPA itself, the Motion must be DENIED.

**D.** NEVADA LAW, CONTROLING THE SPA, ALSO FAVORS THE MOTION'S DENIAL.

Here, the parties agreed that Nevada law would govern the parties' SPA. See Complaint, p.2, at ¶ 4 (quoting SPA Section 6.11, and stating that the "Buyer and Seller hereby agree this Agreement shall be governed by and construed *and enforced* under and in accordance with the laws of the State of Nevada . . .." (emphasis added). The Parties agreed, accordingly, that Federal law

Hogan Hulet PLLC
1140 N. Town Center Dr.
Suite 270
Las Vegas, Nevada 89144
(702) 800-5482

12 of 15

was not to govern the enforceability of their agreement.

The parties freely entered into the SPA with full knowledge of the friction between Nevada and federal law, and knowingly and expressly agreed that the SPA would be governed by Nevada law. Nevada's marijuana laws provide express protections against arrest and prosecution for qualifying licensees. An interpretation of those laws that would allow cultivation of marijuana but would void any contracts underlying such a business would render Nevada's marijuana laws futile, pointless, and confusing. To hold that a court can void an otherwise enforceable agreement related to marijuana cultivation *that is authorized and approved under Nevada law* would violate and frustrate the purpose of Nevada law, and would lead to an absurd result.

Under Nevada law, medical marijuana was legalized in 2000 by ballot measure, as set forth in NRS Chapter 453A effective in 2001. NRS 453A.350, et seq. (and regulations), expressly set out the requirements for a medical marijuana establishment upon approval from local governments. , Recreational marijuana was legalized effective January 1, 2017. See NRS Chapter 453D.

California – where the property addressed within the SPA is located – is no different, having also legalized licensed marijuana cultivation and possession, again generating significant State revenues. Specifically, in 2016, California voters passed Proposition 64, the Adult Use of Marijuana Act (AUMA). Under Proposition 64, adults 21 years of age or older can legally grow, possess, and use cannabis for non-medicinal purposes, with certain restrictions. Additionally, AUMA also made it legal to sell and distribute cannabis through a regulated business as of January 1, 2018.  In 2017, the California State Legislature passed a budget trailer bill, Senate Bill 94, that integrated MCRSA with AUMA to create the Medicinal and Adult-Use Cannabis Regulation and Safety Act (MAUCRSA). Under MAUCRSA, a single regulatory system governs the medicinal and adult-use cannabis industry in California.

In summary, where the SPA was agreed to be enforced under "the laws of the State of Nevada" and where, regardless, the Motion presents insufficient information on which the Court could conduct a severability analysis , the Motion must be denied because the modern view is to enforce contracts to the full extent possible under the rather fluid modern interpretation of federal law and policy.

Hogan Hulet PLLC
1140 N. Town Center Dr.
Suite 270
Las Vegas, Nevada 89144
(702) 800-5482

13 of 15

Plaintiff contracted for and wants the stock certificates to which it is entitled, and there is absolutely nothing illegal in providing them. Because the form of Motion prohibits the severability analysis described in both State and Federal caselaw, the MOTION is without merit and must be DENIED.

## **CONCLUSION**

Upon the foregoing reasons, and modern caselaw, Plaintiff respectfully requests that this Court DENY the Motion to Dismiss in its entirety.

Dated this 27th day of April, 2020.

HOGAN HULET PLLC

ss:// **Kenneth E. Hogan** _____
KENNETH HOGAN
Nevada Bar No. 10083
1140 N. Town Center Dr. Suite 300
Las Vegas, Nevada 89144
*Attorneys for Plaintiff*

Hogan Hulet PLLC
1140 N. Town Center Dr.
Suite 270
Las Vegas, Nevada 89144
(702) 800-5482

14 of 15

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 27th day of April, 2020, he served a copy of the foregoing Response, by and through the CM/ECF system, to the attention of:

McKELLEB CARPTENTER HAZELWOOD
Michael W. McKelleb, Esq.
Gregory A. Stein, Esq.
871 Coronado center Drive, Ste 200
Henderson, Nevada 89052
Tel: (702) 659-9631
*Attorneys for Defendant Frank Van Vranken*

ss://  ***Kenneth E. Hogan***
        KENNETH E. HOGAN

Hogan Hulet PLLC
1140 N. Town Center Dr.
Suite 270
Las Vegas, Nevada 89144
(702) 800-5482

15 of 15