**McKELLEB CARPENTER HAZLEWOOD**
Michael W. McKelleb, NV Bar # 12040
871 Coronado Center Drive, Suite 200
Henderson, Nevada 89052
Telephone: (702) 659-9631
Facsimile: (800) 743-0494
minuteentries@carpenterhazlewood.com
michael.mckelleb@mchlawnv.com
VVENT.0001
*Attorneys for Defendant*

**CARPENTER HAZLEWOOD,
DELGADO & BOLEN, LLP**
Gregory A. Stein, NV Bar # 13592
1400 East Southern Avenue, Suite 400
Tempe, Arizona 85282
Telephone: (480) 427-2800
Facsimile: (480) 427-2801
minuteentries@carpenterhazlewood.com
greg.stein@carpenterhazlewood.com
VVENT.0001
*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| Kush, Inc., a Nevada corporation, | Case No. 2:20-cv-00647-APG-NJK |
| Plaintiff, | |
| v. | **REPLY IN SUPPORT OF MOTION TO DISMISS (ECF NO. 8)** |
| Frank Van Vranken, an individual; DOES I-X, inclusive, and ROE Corporations I-X, inclusive, | (Assigned to the Honorable Andrew P. Gordon) |
| Defendants. | Oral Argument Requested – LR 78-1 |

Defendant Frank Van Vranken, Sr. ("Defendant"), by and through undersigned counsel, hereby submits his reply in support of his previously-filed Motion to Dismiss ("Motion"). For the reasons set forth herein and for the reasons set forth in his Motion, which Defendant expressly incorporates for purposes of this Reply, dismissal of Plaintiff Kush, Inc.'s ("Kush") Complaint is warranted in accordance with Federal Rules of Civil Procedure 12(b)(6) and 9(b). This Motion is supported by the following Memorandum of Points and Authorities.

RESPECTFULLY SUBMITTED this 4th day of May, 2020.

**McKELLEB CARPENTER HAZLEWOOD**

By: /s/ Greg Stein
Michael W. McKelleb, Esq.
Gregory A. Stein, Esq.
871 Coronado Center Drive, Suite 200
Henderson, Nevada 89052
*Attorneys for Defendant*

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.  BRIEF RECITATION OF LEGAL ARGUMENTS SET FORTH IN MOTION**

As set forth in his Motion, Defendant sought dismissal of: (a) Kush's entire Complaint because the underlying contracts (including the VVE Agreement) are illegal and unenforceable under the Controlled Substances Act and therefore the Complaint fails to state a claim upon which relief can be granted in accordance with Federal Rule of Civil Procedure 12(b)(6); (b) Kush's Third, Sixth, and Seventh Claims for Relief for failure to state a claim upon which relief can be granted in accordance with Federal Rule of Civil Procedure 12(b)(6); and (c) Kush's Sixth Claim for Relief based on its failure to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b).

To reiterate, enforcement of the VVE Agreement as demanded by Kush would result in the enforcement of an illegal contract. No additional documents or evidence need to be referenced outside of Kush's Complaint itself. Specifically, Kush's Complaint contains the following allegations demonstrating that Kush's primary purpose in entering into the VVE Agreement was to advance its presence in the marijuana industry and to invest in and partner with existing companies to grow, cultivate, and sell marijuana:

8.  Kush holds production and marketing rights to "Ecuadorian Sativa," the first patented cannabis strain….

19.  [At the time the VVE Agreement was executed, Defendant] committed to working with Kush to save and expand NCWP, to get MG licensed [to grow, cultivate, and sell marijuana] and generating significant revenue….

20.  Kush, for its part, was attracted to the improving lumber market <u>and the emerging cannabis regulations in California that the property was ideally suited for, upon which Kush secured multiple licenses that would enable projected revenue of $1-2M by the second year of operation – with long term forecasts exceeding $10M per year</u>.

24.  …Kush disbursed a sum at or near $1.5M – including a large portion designated for the MG build out, [cannabis] licensing and operations, with Kush purchasing a majority (60/40) interest in MG.

32.  [Defendant] has claimed to have legally grown more than of [sic] 1,000 units of cannabis in 2018 and at or near 1,000 in 2019.

33.  [Defendant] has failed to report sales since the contracts were signed.

35.  [Defendant] has refused to pay to Kush sums received from NCWP and MG [in relation to growing, cultivating, and selling marijuana] which were properly distributable to Kush under the lease agreements between Kush and NCWP and MG.

The foregoing allegations unmistakably demonstrate that Kush has failed to state a claim under Rule 12(b)(6) because enforcing the VVE Agreement **would require this Court to enforce a contract for the operation and expansion of a marijuana-cultivation business, which is illegal under Federal law**, namely the Controlled Substances Act, codified at 21 U.S.C. § 801 *et seq*. (the "CSA"). Furthermore, state law provides the rule of decision on the merits in this case, since Kush's theory of the purported breach of contract would require this Court to find that a contract for the operation and expansion of a drug business is enforceable, which it cannot do. *See Shimrak v. Garcia-Mendoza*, 912 P.2d 822, 825 (Nev. 1996) (Nevada recognizes the rule that "traditionally neither courts of law nor

equity will interpose to grant relief to parties to an illegal agreement."); *see also Rivero v. Rivero*, 216 P.3d 213, 226 (Nev. 2009) ("Parties are free to contract, and the courts will enforce their contracts <u>if they are not unconscionable, illegal, or in violation of public policy</u>.") (emphasis added); *see also Loomis v. Lange Fin. Corp.*, 865 P.2d 1161, 1165 (Nev. 1993) ("No court should be required to serve as paymaster of the wages of crime.").

Finally, as set forth in Defendant's Motion, Kush included the following damaging admissions in its Form S-1 Registration Statement filed with the United States Securities and Exchange Commission ("SEC") on February 14, 2019—a date subsequent to the execution of the underlying VVE Agreement:

> Kush licenses intellectual property including our processes, and then contracts with independent and licensed cannabis cultivators and processors who grow and handle the plant material, perform manufacturing processes, and work through distribution in order to service both medical marijuana patients and recreational cannabis consumers, all according to appropriate state cannabis laws.
> …
> We are directly engaged in the medical and adult-use cannabis industry in the U.S. where local state law permits such activities however all such activities remain illegal under federal law in the U.S.
> …
> Due to the nature of our business and the fact that our contracts involve cannabis and other activities that are not legal under U.S. federal law and in some jurisdictions, we may face difficulties in enforcing our contracts in federal and certain state courts.

Form S-1 at 6, 8, and 14.

Based on the detailed statements set forth above, Kush has already admitted that the underlying contract it seeks to enforce is illegal under federal law and unenforceable in federal court. Consequently, Defendant respectfully requests that the Court dismiss Kush's entire Complaint—a result Kush clearly understood to be a likely result if it sought to enforce the terms of one of its contracts in federal court.

## II. RESPONSE TO KUSH'S LEGAL ARGUMENTS

**A. Kush agreed to dismiss its Third, Sixth, and Seventh Claims for Relief in response to Defendant's Motion.**

Defendant reiterates Kush's agreement to dismiss its Third, Sixth, and Seventh Claims for Relief in this Section (A) so that Defendant's responsive arguments below will correspond with the order set forth in Kush's Response. Consequently, this Court need only analyze whether dismissal of Kush's First, Second, Fourth, and Fifth Claims for Relief is appropriate based on the illegality and unenforceability of the VVE Agreement.

**B. The purchase of corporate securities is plainly illegal when the purchaser's primary purpose is to advance its presence in the marijuana industry and to invest in and partner with existing companies to grow, cultivate, and sell marijuana.**

As a threshold matter, Defendant does not dispute that the generic action of purchasing corporate securities is not illegal on-its-face. Obviously, the vast majority of such purchases do not run afoul of federal or state law. Likewise, the same is true of the vast majority of consumer transactions for the purchase of goods or services. Nevertheless, just like a consumer transaction involving the purchase of illegal drugs (such as marijuana or cocaine) is illegal and cannot be shielded from illegality by generically describing it as a "consumer transaction for the purchase of goods or services," a party's purchase of corporate securities can obviously be illegal under certain factual circumstances. Namely, such a purchase is plainly illegal when the purchaser's primary purpose for transacting is to advance its presence in the marijuana industry and to invest in and partner with existing companies to grow, cultivate, and sell marijuana. Consequently, this Court should reject Kush's attempts to "whitewash" the underlying transaction by describing it as the mere purchase of corporate securities.

In contrast to Kush's assertions, the Complaint sufficiently details the illegal nature of the VVE Agreement (and Kush's primary purpose for entering into it) such that Kush has "plead[ed] [it]self out of court" by pleading facts demonstrating that it cannot prevail on its claims. *Weisbuch v. Cnty of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997). As set forth above, Kush's Complaint states that it holds the first patented cannabis strain in the United States; that Kush was interested in Defendant's property because it was ideally suited for growing marijuana; that Kush had "secured multiple [cannabis] licenses that would enable projected revenue of $1-2M by the second year of operation – with long term forecasts exceeding $10M per year"; that Kush had disbursed approximately $1.5M to build out the marijuana facilities and operations and to obtain the proper cannabis licenses; and that Kush is concerned that Defendant has allegedly grown thousands of units of cannabis since the parties signed the VVE Agreement in 2018, but has purportedly refused to share proceeds and rental revenue with Kush in relation thereto. Complaint at ¶¶ 8, 20, 24, 32, 33, and 35. If the factual allegations contained in Kush's Complaint do not sufficiently demonstrate the illegality and unenforceability of the VVE Agreement, it does not appear that any complaint seeking damages for breach of a contract to grow, cultivate, and sell marijuana would be subject to dismissal in federal court.

### C. Defendant's Motion cited Nevada cases identifying how Nevada courts would address the illegality/enforceability of the VVE Agreement; Kush's Response cited irrelevant case law not binding on this Court.

Although contending that Defendant's Motion contains a "frail legal framework," it is Kush's Response that fails to properly analyze the relevant case law. Initially, Kush acknowledges (as it must) that the CSA "does prohibit…the manufacture, distribution, dispensing of, or possession with intent to manufacture, distribute, or dispense, a controlled

6

substance." Response at 7; *see also* 21 U.S.C. § 841(a). Nevertheless, Kush irrelevantly contends that both Nevada and California have legalized recreational marijuana and that "the federal government has shown no interest in prosecuting marijuana business[es] in compliance with state law." Response at 11. As further support for its irrelevant contention, Kush quotes the Ninth Circuit in *United States v. McIntosh* for the proposition that the "Appropriations Act prohibits the Department of Justice from interfering with the implementation of such laws not simply by suing states with medical marijuana laws, but also by not prosecuting private individuals under federal law for conduct compliant with the state medical marijuana law in their jurisdiction." *Id.* at 11-12

However, Kush failed to properly analyze the Ninth Circuit's ruling in *McIntosh*, which applies only to the narrow issue of whether the Department of Justice is prohibited under the Appropriations Act from prosecuting individuals for violations of the CSA if such individuals are otherwise in compliance with the recreational and medical marijuana laws applicable in their states. Apart from addressing this narrow issue, the Ninth Circuit's ruling did not "overturn" the CSA in favor of state marijuana laws. By contrast, the Ninth Circuit provided the following clarification in a footnote to its decision:

> To be clear, [the Appropriations Act] does not provide immunity from prosecution for federal marijuana offenses. The CSA prohibits the manufacture, distribution, and possession of marijuana. Anyone in any state who possesses, distributes, or manufactures marijuana for medical or recreational purposes (or attempts or conspires to do so) is committing a federal crime. The federal government can prosecute such offenses for up to five years after they occur. Congress currently restricts the government from spending certain funds to prosecute certain individuals. But Congress could restore funding tomorrow, a year from now, or four years from now, and the government could then prosecute individuals who committed offenses while the government lacked funding. Moreover, a new president will be elected soon, and a new administration could shift enforcement priorities to place greater emphasis on prosecuting marijuana offenses.

7

<u>Nor does any state law "legalize" possession, distribution, or manufacture of marijuana. Under the Supremacy Clause of the Constitution, state laws cannot permit what federal law prohibits. U.S. Const. art. VI, cl. 2. Thus, while the CSA remains in effect, states cannot actually authorize the manufacture, distribution, or possession of marijuana. Such activity remains prohibited by federal law</u>.

*United States v. McIntosh*, 833 F.3d 1163, 1179 n.5 (9th Cir. 2016)

In addition, Kush summarized five separate cases in support of its proposition that the VVE Agreement is legal and enforceable under federal law: (1) *Bart Street III v. ACC Enters., LLC* (erroneously identified as "St. v. V." in Kush's Response), Case No. 2:17-cv-00083-GMN-VCF, 2020 WL 1638329 (D. Nev. Apr. 1, 2020)[1]; (2) *In re Burton*, 610 B.R. 633 (B.A.P. 9th Cir. 2020); (3) *Mann v. Gullickson*, Case No. 15-cv-03630-MEJ, 2016 WL 6473215 (N.D. Cal. Nov. 2, 2016); (4) *Green Earth Wellness Ctr., LLC v. Atain Specialty Ins. Co.*, 163 F. Supp. 3d 821 (D. Colo. 2016); and (5) *Green Cross Med., Inc. v. Gally*, 242 Ariz. 293 (Ct. App. 2017). However, only *Bart Street* is instructive as to the legality and enforceability of the VVE Agreement.

As stated in Kush's Response, *In re Burton* indeed provides that "the mere presence of marijuana near a bankruptcy case does not automatically prohibit a debtor from bankruptcy relief." Response at 8. Far from issuing a sweeping pronouncement, however, the *Burton* Court merely goes on to state that a "bankruptcy court must be explicit in articulating its legal and factual bases for dismissal in cases involving marijuana" in order to avoid dismissing bankruptcy actions with only tenuous connections to marijuana. *In re Burton*, 610 B.R. at 638. Nevertheless, the 9th Circuit Bankruptcy Appellate Panel upheld the bankruptcy court's dismissal of the debtor's Chapter 13 case because the debtor owned

---

[1] Copies of all unpublished cases are attached hereto at **Exhibits A – D.**

an interest in an entity that was: (a) "engaged in a business that is illegal under federal law," namely growing and selling marijuana; and (b) involved in "litigation seeking to recover damages [for] profits lost as a result of breaches of contracts related to the growing and selling of marijuana." *Id.* at 639. Given this backdrop, the factual circumstances of the present case appear remarkably similar to those present in *Burton*.

The Court need not consider Kush's references to the *Mann* and *Green Cross* cases. Both cases involve non-binding rulings issued by the District Court for the Northern District of California (*Mann*) and the Arizona Court of Appeals (*Green Cross*) applying California and Arizona law, respectively. While it may be interesting to learn how courts in California and Arizona might resolve marijuana-related issues after applying California and Arizona law, such rulings are irrelevant concerning how a court in Nevada might resolve the issue after applying Nevada law. The Court may also disregard Kush's reference to *Green Earth Wellness*—a case in which the District Court for the District of Colorado resolved a marijuana-related issue concerning the language of an insurance policy after applying Colorado law. As opposed to *Green Earth Wellness* (a case arising out of the 10th Circuit), a District Court within the 9th Circuit has previously adjudicated the same issue and held that a federal court is prohibited under both federal law and notions of public policy from ordering an insurance company to pay for an insured's loss of medical marijuana plants. *See Tracy v. USAA Cas. Ins. Co.*, Civil No. 11-00487 LEK-KSC, 2012 WL 928186 at *13 (D. Haw. Mar. 16, 2012).

As stated above, *Bart Street* is the only case cited in Kush's Response that is instructive as to the legality and enforceability of the VVE Agreement. Nevertheless, *Bart Street* does not support Kush's arguments. In that case, a plaintiff filed suit seeking

9

repayment of loans extended to defendant operators of a marijuana-cultivation business. *See Bart Street*, 2020 WL 1638329 at *1. Ultimately, the parties disputed whether they "primarily intended the loan to provide [p]laintiff a path to obtain an ownership interest in [d]efendants' marijuana business." Id. at *6. <u>If they did, this Court noted that the entire contract would be "unenforceable."</u> *Id.* Although issues of fact precluded the entry of summary judgment in *Bart Street*, no such issues of fact preclude the Court from granting Defendant's Motion in the present case. To that end, the factual allegations in Kush's Complaint sufficiently detail the illegal nature of the VVE Agreement (and Kush's primary purpose for entering into it) such that Kush has pleaded itself out of court. *See also* Response at 6 (wherein Kush casually asserts that "purchasing interests in a marijuana business is [not] illegal"—an assertion directly contradicted by this Court's ruling in *Bart Street*).

### D. The parties' choice-of-law provision incorporates federal law—and in the event of any conflict between federal and state law—the Supremacy Clause dictates that federal law controls.

Defendant wholly rejects Kush's assertion that the parties, in stipulating that the VVE Agreement would be "governed and construed and enforced under and in accordance with the laws of the State of Nevada," nevertheless agreed "that Federal law was not to govern the enforceability of their agreement." Response at 12-13. Initially, the parties also agreed to "irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the courts of the State of Nevada <u>and of the United States of America located in Nevada</u> for any actions, suits or proceedings arising out of or relating to this Agreement." Complaint at I, ¶ 4 (emphasis added). The VVE Agreement cannot be interpreted so as to permit the parties to litigate their dispute in federal court, while at the same time preclude Defendant from raising certain federal defenses if the parties proceed to litigate in federal court.

Moreover, the parties' selection of Nevada for choice-of-law purposes does not mean that federal law is inapplicable to this dispute. In fact, the parties' selection of Nevada law to apply in the event of any dispute means that the parties must have also necessarily intended to select federal law because "federal law is law in the State as much as laws passed by the state legislature." *Howlett By and Through Howlett v. Rose*, 496 U.S. 356, 380 (1990). Because federal law preempts Nevada law, the parties must have also intended that federal law prevail in the event of a conflict. This result follows logically from the Supremacy Clause of the United States Constitution, whereby the "Constitution, and the Laws of the United States…shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2; *see also McIntosh*, 833 F.3d at 1179 n.5 ("Nor does any state law 'legalize' possession, distribution, or manufacture of marijuana. Under the Supremacy Clause of the Constitution, state laws cannot permit what federal law prohibits. Thus, while the CSA remains in effect, states cannot actually authorize the manufacture, distribution, or possession of marijuana. Such activity remains prohibited by federal law.").

Finally, to the extent Kush argues that the VVE Agreement demonstrates the parties' intent to choose only Nevada law to the exclusion of contrary federal law, such argument must fail because parties cannot opt-out of a mandatory federal law (like the CSA) by means of a choice-of-law clause. In *Hayes*, the Fourth Circuit assessed the validity of a loan agreement containing an arbitration provision stating that it is "subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe" and that "no other state or federal law or regulation shall apply to [the agreement]." *Hayes v. Delbart Servs. Corp.*, 811 F.3d 666, 669 (4th Cir. 2016). Rejecting the lender's arguments that the borrower waived the

applicability of the federal Fair Debt Collection Practices and Telephone Consumer Protection Acts, the Fourth Circuit held that a party may not use a choice-of-law clause to "flatly and categorically renounce the authority of the federal statutes to which it is and must remain subject." *Id.* at 675. "Because the arbitration agreement in this case takes this plainly forbidden step, we hold it invalid and unenforceable." *Id.* This Court recently cited with approval to the Fourth Circuit's holding in *Hayes*. *See Rideout v. CashCall, Inc.*, Case No. 2:16-cv-02817-RFB-VCF, 2018 WL 1220565, at *6 (D. Nev. Mar. 8, 2018).

As set forth above, federal law continues to prohibit the "possession, distribution, or manufacture of marijuana [and,] while the CSA remains in effect, states cannot actually authorize the manufacture, distribution or possession of marijuana." *McIntosh*, 833 F.3d at 1179 n.5. Consequently, the parties could not waive the enforceability or applicability of the CSA to the VVE Agreement.

### III. CONCLUSION

Based on the foregoing arguments, Defendant respectfully requests that the Court dismiss Kush's Complaint in its entirety. Although Defendant believes that complete dismissal is warranted, the Court may not be inclined to order complete dismissal. In that event, Defendant respectfully requests that the Court issue the following rulings: (a) the VVE Agreement is governed by federal law (the CSA); (b) to the extent of any conflict, the CSA and federal law in general preempt any contrary state law; (c) possession, manufacturing, or distribution of marijuana is illegal in both California and Nevada despite the existence of state law to the contrary; and (d) the VVE Agreement and/or provisions contained therein are illegal if violative of the CSA. Even if the Court does not believe at this time that it can

dismiss Kush's Complaint in its entirety, Defendant respectfully requests that the Court issue the foregoing rulings to narrow the scope of the litigation going forward.

RESPECTFULLY SUBMITTED this 4th day of May, 2020.

**McKELLEB CARPENTER HAZLEWOOD**

By: *Greg Stein*
Michael W. McKelleb, Esq.
Gregory A. Stein, Esq.
871 Coronado Center Drive, Suite 200
Henderson, Nevada 89052
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2020, I electronically transmitted the foregoing Reply in Support of Motion to Dismiss using the CM/ECF System for filing, and that I transmitted a Notice of Electronic Filing to the following CM/ECF registrants:

>Kenneth Hogan, Esq., and Jeffrey Hulet, Esq.
>HOGAN HULET, PLLC
>1140 North Town Center Drive, Suite 300
>Las Vegas, Nevada 89144
>ken@h2legal.com
>jeff@h2legal.com
>*Attorneys for Plaintiff*

By: /s/Greg Stein