HOGAN HULET PLLC
KENNETH HOGAN
Nevada Bar No. 10083
Email: ken@h2legal.com
JEFFREY HULET
Nevada Bar No. 10621
E-mail: jeff@h2legal.com
1140 N. Town Center Dr. Suite 300
Las Vegas, Nevada 89144
Tel/Fax: (702) 800-5482
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KUSH, INC., a Nevada corporation,<br><br>                    Plaintiff,<br>vs.<br><br>FRANK VAN VRANKEN, an individual;<br>DOES I-X, inclusive, and ROE Corporations I-X,<br>inclusive,<br><br>                    Defendants. | CASE NO. 2:20-cv -00647-APG -JNK<br><br>**MOTION FOR DECLARATORY RELIEF** |

Plaintiff KUSH, INC. ("Plaintiff") hereby files its Motion for Declaratory Relief, seeking a judicial declaration as to the rights of the parties under the Securities Purchase Agreement that underlies this action, and specifically a determination as to whether the contract at issue is illegal, and if so, severable..

This Motion is made and based on the following Memorandum of Points and Authorities, the papers and pleadings on file herein, and any argument of counsel to be entertained by the Court.

DATED this 25th Day of August, 2020.

HOGAN HULET PLLC

ss:// Kenneth E. Hogan                            
Nevada Bar 10083
1140 N. Town Center, Suite 300
Las Vegas, Nevada 89144
Attorneys for Plaintiff, Kush, Inc.

Hogan Hulet PLLC
1140 N. Town Center Dr.
Suite 270
Las Vegas, Nevada 89144
(702) 800-5482

1 of 12

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.  Statement of Relevant Facts.**

**1.**     The contract at issue, sought to be enforced by and through the Complaint, is a Securities Purchase Agreement (the "SPA").

**2.**     The SPA has never been set before this Court for analysis, but is attached here as **Exhibit 1**.

3.     The Complaint does not seek any relief that would cause the Defendant to act illegally.  <u>See</u> ECF 1 (containing the Complaint).

4.     Paragraph 54 of the Complaint asserts that "by his signature on the SPA [Defendant] did in fact sell and transfer said stock to Kush but [Defendant] has failed to issue stock certificates reflecting said ownership and has failed to provide any documentation that said sale has been documented at least as uncertificated shares in the books and records, including the Stock Ledger, of VVE." <u>Id</u>.

5.     Paragraph 55 of the Complaint asserts that Defendant was contractually obligated to take all actions consistent with the terms of the VVE Agreement to carry out the transactions contemplated therein. <u>Id</u>.

6.     Paragraph 56 of the Complaint asserts that Defendant "failed and refused to provide Kush with documentation of its controlling interest over VVE and the Property, which was a material term of the parties' agreements." <u>Id</u>.

7.     The Complaint seeks specific performance of obligations owing pursuant to the SPA. <u>Id</u>, at  ¶¶ 11, 12, 16(b), and 57.

8.     The "premises" or fact underlying the purpose of the SPA are explicit and in writing, to include the following:

a.   Van Vranken Enterprises represents itself to be a "real estate holding company" owing 10.01 acres of property in Mendocino County, California, subject to debt in the approximate amount of $1,255,873.74, and seeking additional funding and support for its holdings. Ex. 1, p. 1.

b.   Plaintiff states, and by his signature Defendant agrees, that Plaintiff's purpose in

**Hogan Hulet PLLC**
1140 N. Town Center Dr.
Suite 270
Las Vegas, Nevada 89144
(702) 800-5482

2 of 12

entering into the SPA was to acquire valuable assets in an effort "to go public." Id.

9.      The SPA, in its entirety, is designed to transfer control of the holding company and its real property to Plaintiff. See, generally, Ex. 1.

10.     Prior to consummation of the October 1, 2018 SPA, on or about January 13, 2017 and as a part of the due diligence underlying the SPA, the Parties shared an APPRAISAL REPORT OF IMPROVED INDUSTRIAL LAND LOCATED AT: 700 & 860 KUNZLER RANCH ROAD, UKIAH, CA; APNS: 169-250-04, 19 setting the value of the holding company's real property assets at $6,700,000. See Appraisal Executive Summary Letter, attached hereto as **Exhibit 2**.

11.     The SPA contemplates the buyer taking 51% interest in the Real Property, at a value of at or near $3,350,000. Ex. 1, p. 1 (at Section 1.01) by and through the following considerations:

   a.   $995,229.98 through private assumption of the First Note "associated with the Property;"

   b.   $260,643.76 through private assumption of the Second Note "associated with the Property;"

   c.   $724,126.30 in stock shares of Cannabis Sativa, Inc. free trading common stock to Defendant; and

   d.   $120,000 in the form of cancellation of a $120,000 debt owed to Plaintiff.

12.     The SPA provides, as agreed by the parties, that:

This Agreement represents the entire agreement between the parties relating to the subject matter hereof. All previous agreements between the parties, whether written or oral, have been merged into this Agreement. This Agreement alone fully and completely expresses the agreement of the parties relating to the subject matter hereof. There are no other courses of dealing, understandings, agreements, representations, or warranties, written or oral, except as set forth herein.

Ex. 1 (Section 6.04).

13.     The SPA further explicitly states the Parties' agreement that:

Every provision of this Agreement is intended to be severable. If any term or provision hereof is illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the validity of the remainder hereof.

Ex. 1 (Section 6.05).

18.     The parties further agreed that the SPA would be governed by and construed and

Hogan Hulet PLLC
1140 N. Town Center Dr.
Suite 270
Las Vegas, Nevada 89144
(702) 800-5482

3 of 12

1    enforced under an in accordance with the laws of the State of Nevada. See Ex. 1 (Section 6.11).

2         19.    In Seller's representations and warranties, Defendant explicitly agrees, in writing,

3    that "[t]he performance of this Agreement and the consummation of the transactions herein

4    contemplated will not result in . . . violation of any . . . statute . . .." See Ex. 1, p. 6 (Section 3.03).

5         20.    Even despite his written agreement that the stock sale violates no statute, Defendant

6    now asserts in this action that the SPA violates U.S. Code.  See e.g. Defendants' Motion to

7    Dismiss, on file herein at ECF 8.

8                                              **II.**

9                                    **LEGAL ARGUMENT**

10                                              **A.**

11                        **Legal Standard for Declaratory Relief**

12         The Declaratory Judgment Act (the Act) permits a federal court to "declare the rights and

13   other legal relations" of parties to "a case of actual controversy." 28 U.S.C. § 2201. The "actual

14   controversy" requirement of the Act is the same as the "case or controversy" requirement of Article

15   III of the United States Constitution. Societe De Conditionnement En Aluminium v. Hunter

16   Engineering Co. Inc., 655 F.2d 938, 942 (9th Cir. 1981) (citing Aetna Life Ins. Co. v. Haworth,

17   300 U.S. 227, 239-40 (1937)). The controversy must be definite and concrete, touching the legal

18   relations of parties having adverse legal interests in which the "judicial function may be

19   appropriately exercised although the adjudication of the rights of the litigants" in a fashion that

20   provides "relief through a decree of a conclusive character" as to parties rights, but may not require

21   the payment of damages. Id.

22         The purposes of the Act have been aptly described as enabling courts to clarify the positions

23   of litigants through bringing a present litigable controversy to the forefront for decision, rather

24   than holding the parties to awaiting a full trial on the merits in the future.  Id. A case is ripe for

25   declaratory decision where the essential facts establishing the right to declaratory relief have

26   already occurred.  Wickland Oil Terminals v. Asarco Inc., 792 F.2d 887, 893 (9th Cir. 1986).

27

28

Hogan Hulet PLLC
1140 N. Town Center Dr.
Suite 270
Las Vegas, Nevada 89144
(702) 800-5482

4 of 12

Here, the existence of the SPA and its contents are uncontested and yet, the Parties hold adverse positions as to the enforceability of the contract. Plaintiff has sued for enforcement, and Defendant asserts that the SPA is unenforceable as a matter of law upon the proposition that it is an illegal contract.  <u>See</u> First Amended Complaint (ECF 24); *compare* Motion to Dismiss (ECF 8). The adverse positions taken as to the rights and obligations of the Parties pursuant to the SPA accordingly constitute "a case of actual controversy" under 28 U.S.C. § 2201, with such controversy being definite and concrete, touching the legal relations of parties .  Accordingly, given that this threshold issue as to the enforceability vs. illegality of the SPA is at the heart of this action, the judicial function should be exercised to provide the parties with determinative clarity on that controversy early in the litigation through a decree of a conclusive character under the Declaratory Judgment Act.

**B.**

**<u>This Court should enter a decree of conclusive character that the SPA is Enforceable</u>**

Plaintiff's position is that the SPA is enforceable, in that it is merely a contract for the purchase and sale of securities between Plaintiff and what is described in the document as a real property holding company, so as to give Plaintiff adequate assets (a controlling interest in a property valued near $7M) to schedule and proceed with a public offering.  <u>See</u> Ex. 1, p. 1. The Parties agreed on the foregoing facts.  <u>Id</u>. Such a transaction, clearly, is not an illegal drug deal as Defendant asserts.

Defendant, in an attempt to escape his obligations under the SPA, asserts that the *intent of* (rather than any specific term of) the SPA was illegal.  <u>See</u> *e.g*. Motion to Dismiss (ECF 8).  On its face, the intent of the SPA is to memorialize the purchase and sale of securities of a corporation. Ex. 1, *generally*.  On its face, the SPA expressly states Plaintiff's purpose and intent in entering the transaction – to which Defendant agreed – as being to obtain assets sufficient to go public.  Ex. 1, p. 1.  On its face, the document requires neither the Plaintiff nor Defendant to do any illegal act. Ex. 1, *generally*.

Hogan Hulet PLLC
1140 N. Town Center Dr.
Suite 270
Las Vegas, Nevada 89144
(702) 800-5482

5 of 12

**A. Defendant agreed, in writing, that there were no "understandings" mutually agreed between them other than as expressly stated in the SPA.**

With recitations and terms in writing and agreed as to the purpose of the SPA, accordingly, Defendant must argue the unenviable position that there was something dark going on in the background in the form of some other understanding and agreement, unsaid and undocumented, to further an illegal purpose. The position is unenviable, and more to the point wholly unsupportable, where the parties also expressly agreed that "[t]here are no other courses of dealing, understandings, agreements, representations, or warranties, written or oral, except as set forth herein" and that the SPA, itself, stands alone to represent the entire agreement between the parties. Ex. 1 (Section 6.04).

**B. Defendant agreed, in writing, that the SPA, from its executory stage through full performance, was not illegal.**

Given that the Defendant's avenue to prove some other agreement is foreclosed by his own agreement that there was no such agreement, Defendant is left to show that there is something in the SPA itself that gives rise to illegality.  This argument is no easier, where Defendant further expressly and unambiguously agreed in a writing by which he agreed to be bound (specifically under the Seller's representations and warranties) that "[t]he performance of this Agreement and the consummation of the transactions herein contemplated will not result in . . . violation of any . . . statute . . . ."  See Ex. 1, p. 6 (Section 3.03).

**C. Defendant agreed, in writing, that the intention of the parties was to avoid any determination that the whole of the contract was illegal.**

The SPA further explicitly states the Parties' agreement that every individual provision of the contract was designed to be severable, such that if any provision was determined to be illegal, the balance of the contract was intended to stand as enforceable. Ex. 1 (Section 6.05).

**D. The contract, and the law itself, each demands enforcement to the fullest extent possible.**

    1.  Defendant's alleged "intent" behind his own desire to enter into the SPA is not a defense as a matter of law.

Where there is nothing *malum in se* or *malum prohibitum* within the entirety of the fully integrated SPA, and it is expressly agreed therein that no performance owing under the SPA

Hogan Hulet PLLC
1140 N. Town Center Dr.
Suite 270
Las Vegas, Nevada 89144
(702) 800-5482

violates any statute, a long-held principle of law comes to the forefront to challenge Defendant's attempts to escape his obligations: the law may not punish a mere intention where there is no illegal performance upon the intent. It has been argued by this Defendant that his own "intent" in entering the SPA was to obtain funding for illegal growth, possession, and distribution of marijuana.  While this argument fails upon the Plaintiff's stated intent of the SPA within the recitals (to enable Plaintiff to show positive assets to an extent necessary to support a public offering), it fails further under a well-settled rule of law:

> It is an ancient principle, and a well-founded one, that *the law does not punish a wrongful intent when nothing is done to carry that intent into effect*. . . . Where the sale is not necessarily *per se* a violation of the law, unless the unlawful purpose enters into and forms a part of the contract of sale, *the vendee cannot set up his own illegal intent in bar of an action for the purchase money*.

Id. at 157, 159, 161 P. 514, 515 (1916) (*emphasis added*).

Here, Defendant has taken the judicial position that "enforcing the VVE Agreement [the SPA] would require this Court to enforce a contract for the operation and expansion of a marijuana-cultivation business that is illegal under Federal law, namely the Controlled Substances Act." Motion to Dismiss, p. 7:4-10 (ECF 8). This argument falls flat as a matter of law when one accepts that: (a) the face of the document shows that the company in which Plaintiff bought interest was a mere holding company rather than a cultivation entity; (b) it was Defendant who received the monies paid out as documented in the SPA, rather than Plaintiff (such that Plaintiff took no capital with which to "operate" or "expand" a cultivation business, and to the contrary depleted its ability to do so; (c) if Defendant intended to use the proceeds to operate and expend his own cultivation business then he is barred from setting up his own illegal intent as a defense to his contractual obligations; and in any event (d) there is no requirement within the SPA that Defendant invest the capital proceeds he received from the transaction in a cultivation business.

   2.   Parol evidence is not admissible as a matter of law where there is no ambiguity in the SPA.

If a contract is integrated, the parol evidence rule operates to exclude evidence that is not "relevant to prove a meaning to which the language of the instrument is reasonably susceptible." A. Kemp Fisheries Inc. v. Castle & Cooke Inc. Bumble Bee Seafoods Div., 852 F.2d 493, 495 (9th

Hogan Hulet PLLC
1140 N. Town Center Dr.
Suite 270
Las Vegas, Nevada 89144
(702) 800-5482

Cir. 1988). "[E]xtrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract." Id. 69 Cal.Rptr. at 565, 442 P.2d at 645.

Here, there is no genuine question that the SPA is fully integrated, given its extensive detail and its express statement of integration. Ex. 1 (Section 6.04). Defendant may not, as a matter of law, present evidence that there was some understanding between Plaintiff the holding company as to illegal conduct that is not evident within the four corners of the document itself. What is plainly evident from the four corners of the document is the unambiguous statement that the purpose of the contract was to provide Plaintiff with a controlling interest over a significantly valuable real property asset that would enable Plaintiff to present a balance sheet that would support a public offering.  Ex. 1, p. 1.

3.  Defendant is estopped from asserting illegality.

It is uncontested that Defendant represented and warranted, expressly and in writing, that the terms of the SPA, and the performance of such terms, were not illegal.  See Ex. 1, p. 6 (Section 3.03) (warranting that "[t]he performance of this Agreement and the consummation of the transactions herein contemplated will not result in . . . violation of any . . . statute . ...").

It is well-settled that the doctrine of equitable estoppel functions to prevent the assertion of defenses that in equity and good conscience should not be available due to a party's conduct.  In re Estate of Baclet, 458 P.3d 427 (Nev. Ct. App. 2020) (citing In re Harrison Living Trust, 121 Nev. 217, 223, 112 P.3d 1058, 1061-62 (2005) (footnote omitted) (applying equitable estoppel to bar an NRCP 60(b)(4) motion). In Nevada, equitable estoppel has four elements:

(1) the party to be estopped must be apprised of the true facts;

(2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended;

(3) the party asserting the estoppel must be ignorant of the true state of facts;

(4) he must have relied to his detriment on the conduct of the party to be estopped.

Id. (quoting Cheqer, Inc. v. Painters & Decorators, 98 Nev. 609, 614, 655 P.2d 996, 998-99 (1982)).

Here, there is no credible argument that Defendant, long-involved in the cultivation of

marijuana, was not fully aware of laws applicable to the cultivation of cannabis, and with that knowledge, negotiated, reviewed, and executed a written representation and warranty that the SPA was *not illegal*.  Ex. 1 (Section 3.03). Defendant made that warranty intending that Plaintiff rely upon the warranty and execute the SPA, and thereafter provide to Defendant the benefits of the contract.  Of note, the SPA provides further that the Agreement shall be binding upon Defendant. Ex. 1, p. 13 (Section 6.08). Defendant never stated any belief (*until this action commenced*) that the SPA was illegal, even while sitting on Plaintiff's Board of Directors.  Plaintiff relied upon Defendant's warranty, consummated the SPA, and provided Defendant with benefits, accordingly. It is patently unfair to countenance Defendant's "illegality" argument where he unambiguously warranted "legality" to obtain the benefits of the SPA. Said plainly, this is a museum-quality specimen of a circumstance where equitable estoppel must function to prevent the assertion of defenses that in equity and good conscience should not be available due to a party's conduct – in the form of agreed written representations and warranties.

         4.   Defendant, through his signature on the SPA, waived his defense of illegality.

      Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it.   CBS Inc. v. Merrick, 716 F.2d 1292, 1295 (9th Cir. 1983).  Here, Section 3.03 of the SPA, where Defendant represents and warrants that the SPA is not illegal, operates as a waiver of Defendant's present attempted defense that the SPA violates the law. To hold otherwise, the Court must determine that Defendant did not intend to waive assertions of illegality, and in turn must find that the representation expressly made by this Defendant within the SPA was fraudulent.

         5.   To the extent any portion of the SPA for any reason deemed illegal, that specific provision should be severed if at all possible.

      Nevada has long recognized the doctrine of severability. Linebarger v. Devine, 214 P. 532, 534 (1923); Vincent v. Santa Cruz, 647 P.2d 379, 381 (1982); Sprouse v. Wentz, 781 P.2d 1136, 1140 (1989). Severability preserves the contracting parties' intent by maintaining the existence of a contract but striking illegal provisions that are collateral to the contract's primary purpose. See Linebarger, 214 P. at 534; see also 8 WILLISTON ON CONTRACTS § 19:70 (4th ed. 2014) (citing

Hogan Hulet PLLC
1140 N. Town Center Dr.
Suite 270
Las Vegas, Nevada 89144
(702) 800-5482

9 of 12

1   RESTATEMENT SECOND, CONTRACTS § 183, comment a) ("An illegal portion of an
2   agreement that relates to the remedy is more readily separable.").

3       Here, it is clear that the parties intended any illegal portion to be severed in an effort to save
4   the remainder of the contract. Ex. 1 (Section 6.05) (stating expressly that every provision within
5   the SPA was intended to be severable, such that "illegality or invalidity shall not affect the validity
6   of the remainder" of the Parties' agreement.

7           6.  The Parties agreed that Nevada law controls enforcement.

8       Here, the parties agreed that Nevada law would govern the parties' SPA. See Ex. 1, Section
9   6.11 (stating that the "Buyer and Seller hereby agree this Agreement shall be governed by and
10  construed *and enforced* under and in accordance with the laws of the State of Nevada . . .."
11  (*emphasis added*). The Parties agreed, accordingly, that Federal law was not to govern the
12  enforceability of their agreement.

13      The parties freely entered into the SPA with full knowledge of the friction between Nevada
14  and federal law, and knowingly and expressly agreed that the SPA would be governed by Nevada
15  law. Nevada's marijuana laws provide express protections against arrest and prosecution for
16  qualifying licensees. An interpretation of those laws that would allow cultivation of marijuana but
17  would void any contracts underlying such a business would render Nevada's marijuana laws futile,
18  pointless, and confusing. To hold that a court can void an otherwise enforceable agreement related
19  to marijuana cultivation *that is authorized and approved under Nevada law* would violate and
20  frustrate the purpose of Nevada law, and would lead to an absurd result.

21      Under Nevada law, medical marijuana was legalized in 2000 by ballot measure, as set forth
22  in NRS Chapter 453A effective in 2001. NRS 453A.350, et seq. (and regulations), expressly set out
23  the requirements for a medical marijuana establishment upon approval from local governments. ,
24  Recreational marijuana was legalized effective January 1, 2017. See NRS Chapter 453D.

25      California – where the property addressed within the SPA is located – is no different, having
26  also legalized licensed marijuana cultivation and possession, again generating significant State
27  revenues. Specifically, in 2016, California voters passed Proposition 64, the Adult Use of Marijuana
28  Act (AUMA). Under Proposition 64, adults 21 years of age or older can legally grow, possess, and

Hogan Hulet PLLC
1140 N. Town Center Dr.
Suite 270
Las Vegas, Nevada 89144
(702) 800-5482

10 of 12

use cannabis for non-medicinal purposes, with certain restrictions. Additionally, AUMA also made it legal to sell and distribute cannabis through a regulated business as of January 1, 2018. In 2017, the California State Legislature passed a budget trailer bill, Senate Bill 94, that integrated MCRSA with AUMA to create the Medicinal and Adult-Use Cannabis Regulation and Safety Act (MAUCRSA). Under MAUCRSA, a single regulatory system governs the medicinal and adult-use cannabis industry in California.

The bottom line is that Plaintiff contracted for and wants the stock certificates to which it is contractually entitled, and there is absolutely nothing requiring any illegal act whatsoever in providing them, or sharing books and records, or any other performance obligated in what this Defendant has expressly warranted is a Securities Purchase Agreement that violates no law. Accordingly, this Court should resolve the underlying adverse positions of these parties as to the enforceability of the SPA. with such controversy being definite, concrete, and touching the legal relations of parties by issuing a decree of a conclusive character under the Declaratory Judgment Act.

## CONCLUSION

Upon the foregoing reasons, Plaintiff respectfully requests that this Court GRANT the instant Motion and issue a judicial declaration that the SPA is not an illegal contract, and that Defendant may not assert illegality as a defense to enforcement.

Dated this 25th day of August, 2020.

HOGAN HULET PLLC


ss:// *Kenneth E. Hogan* _____
KENNETH HOGAN
Nevada Bar No. 10083
1140 N. Town Center Dr. Suite 300
Las Vegas, Nevada 89144
*Attorneys for Plaintiff*

Hogan Hulet PLLC
1140 N. Town Center Dr.
Suite 270
Las Vegas, Nevada 89144
(702) 800-5482

11 of 12

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 25th day of August, 2020, he served a copy of the foregoing Response, by and through the CM/ECF system, to the attention of:

McKELLEB CARPTENTER HAZELWOOD
Michael W. McKelleb, Esq.
Gregory A. Stein, Esq.
871 Coronado center Drive, Ste 200
Henderson, Nevada 89052
Tel:  (702) 659-9631
*Attorneys for Defendant Frank Van Vranken*

ss:// ***Kenneth E. Hogan***
KENNETH E. HOGAN

Hogan Hulet PLLC
1140 N. Town Center Dr.
Suite 270
Las Vegas, Nevada 89144
(702) 800-5482

12 of 12